[Crim. No. 1030.   Second Appellate District, Division One.—May 8, 1924.]

THE PEOPLE, Respondent, v. H. J. GRAHLE, Appellant.

[1] CRIMINAL LAW—RECEIVING STOLEN PROPERTY—CORPORATE EXISTENCE OF OWNER OF PROPERTY—PLEADING—EVIDENCE—ABSENCE OF PREJUDICE.—In a prosecution for the crime of receiving stolen property, the information having alleged that the property in question was the property of a railway company, a corporation, defendant could not have been misled by such allegation, nor injured by reason of the failure of the prosecution to prove whether or not said railway company was a corporation, where the corporate existence of said company was not a factor in the description either of the property alleged to have been stolen, or in the persons by whom it was stolen.

[2] ID.—GIST OF OFFENSE OF RECEIVING STOLEN PROPERTY.—The gist of the offense of receiving stolen property is the receipt thereof by defendant with guilty knowledge of the fact, coupled with the intent of depriving the owner thereof of its possession.

[3] ID.—PLEADING—NAME OF PERSON FROM WHOM GOODS WERE RECEIVED—NAME OF THIEF—GENERAL RULE.—It is a general rule

---

1.  See 2 Cal. Jur. 1017; 2 R. C. L. 230.

2.  Knowledge necessary to convict one of receiving stolen property, notes, 26 Am. Dec. 261; 15 Ann. Cas. 899; 22 L. R. A. (N. S.) 823. See, also, 17 R. C. L. 85.

3.  Necessity of alleging name of thief in indictment or information in prosecution for receiving stolen goods, notes, 18 Ann. Cas. 196; Ann. Cas. 1914B, 174. See, also, 17 R. C. L. 89.

that the information charging the offense of receiving stolen goods need not set forth either the . name of the person from whom the goods were received by the defendant, or the name of the person who committed the original theft.

[4] ID.—PLEADING—INFORMATION—WHAT IS REQUIRED.—In a prosecution for the crime of receiving stolen property all that is required of an information is that it contain a statement of the acts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended.

[5] ID.—USE OF FICTITIOUS NAMES—INFORMATION.—The names John Doe and Richard Roe are so commonly, if not universally, used in English-speaking countries for the purpose of designating fictitious or unknown persons that any person of "common understanding" knows what is intended when such names are used in an indictment or in an information without any explanation regarding same.

[6] ID.—INFORMATION—FICTITIOUS NAMES OF THIEVES—UNDERSTANDING OF DEFENDANT—PRESUMPTION.—In a prosecution for the crime of receiving stolen cigarettes, the information having alleged that one John Doe and one Richard Roe stole said cigarettes, which were the personal property of a railway company, and that thereafter the defendant bought and received them from said John Doe and Richard Roe, with knowledge of the fact that they were stolen, and there having been nothing in the evidence which would indicate that defendant was not a person of at least "common understanding," the defendant must be presumed to have understood from the language of the information that certain persons whose names were unknown to the district attorney were by him alleged to have committed the larceny of the cigarettes, and that it was from such unknown persons that defendant received them.

[7] ID.—CORRESPONDENCE OF ALLEGATION WITH PROOF—PURPOSE OF RULE.—The purpose of the rule requiring that the allegation correspond with the proof regarding the name of the thief is that the defendant may be protected as against a subsequent prosecution for the same offense; but where the transaction of which complaint is made is clearly identified, the rights of a defendant may be as thoroughly and as completely protected as though the correct name of the thief had been accurately set forth in the information.

4. Form and sufficiency of indictments, note, 3 Am. St. Rep. 279. See, also, 14 Cal. Jur. 24; 14 R. C. L. 171; 17 R. C. L. 88.

5. See 14 Cal. Jur. 31.

[8] ID.—DATE OF LARCENY—STATUTE OF LIMITATIONS—PLEADING.—In such prosecution, the date of the larceny having been alleged as having occurred on or about a certain day, the question of whether the larceny was committed on a particular day is immaterial so long as the date falls within the statute of limitations for the prosecution of the offense and the cigarettes are shown to have been within the possession of the railway company at the time the larceny occurred.

[9] ID. — PLEADING—IDENTIFICATION—TITLE—POSSESSION. — Where the act charged is otherwise identified, an erroneous allegation of ownership or possession of the subject matter of the larceny is immaterial.

[10] ID. — KNOWLEDGE — POSSESSION — EVIDENCE — VERDICT.—In such prosecution, the jury was warranted from the evidence in reaching the conclusion that defendant received the property in question with guilty knowledge that it had been stolen, and that his subsequent acts showed that he intended to prevent the owner from again possessing his property.

[11] ID.—SALES OF STOLEN PROPERTY—USE OF ASSUMED NAME—EVIDENCE.—In such prosecution, conceding that evidence, introduced for the avowed purpose of corroborating a witness who had testified regarding defendant's participation in a sale of the stolen cigarettes, and particularly as to the use by defendant of a certain name which had been written by him on the cover of the cartons containing the cigarettes, to the effect that subsequent to the sale mentioned defendant made a subsequent sale of other "cigarettes and tobacco" apparently for a man of that name, and for which merchandise defendant was paid a stated sum by means of a check, and which check was filed as an exhibit in the case, was immaterial and should have been rejected, no prejudicial error resulted from its admission, where it was not attempted to show the commission by defendant of a similar offense, and no claim was made, nor any evidence offered, which tended to show, that the subsequent sale was not legitimate in all respects.

[12] ID.—MOVEMENTS OF STOLEN PROPERTY—EVIDENCE.—In such prosecution no error was committed by the trial judge in refusing to strike out certain evidence introduced by the prosecution for the purpose of tracing the movements of the stolen cigarettes and the car in which they were being transported, the assumption by defendant that such testimony was in conflict with other evidence being no good reason why it should be taken from the consideration of the jury.

---

8.  See 7 Cal. Jur. 925; 8 R. C. L. 133.

9.  See 14 Cal. Jur. 37; 17 R. C. L. 89.

[13] ID.—VERDICT—INSTRUCTIONS.—In such prosecution, defendant's request that the court peremptorily instruct the jury to return a verdict of not guilty was properly refused.

[14] ID.—REFUSED INSTRUCTIONS COVERED BY GIVEN INSTRUCTIONS—ABSENCE OF ERROR.—In such prosecution, there was no error on the part of the trial court in refusing to give to the jury, at defendant's request, certain instructions covering various subjects, where such subjects were substantially covered by the court in other instructions given to the jury.

[15] ID.—JURIES AND JURORS—REASONABLE DOUBT—INSTRUCTIONS.—In such prosecution, although it is proper to give an instruction, "that if, after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror so entertaining such doubt not to vote for a verdict of guilty, nor to be influenced in so voting, for the single reason that a majority of the jury should be in favor of a verdict of guilty," the refusal to give such an instruction does not constitute such error as will for that reason alone justify the reversal of the case.

[16] ID.—INTENT—PRESUMPTION—INSTRUCTIONS.—In such prosecution, the defendant was not prejudiced by the giving of an instruction that "A person must be presumed to intend to do that which he voluntarily and willfully does in fact do, and must also be presumed to intend all the natural, probable and usual consequences of his own acts."

[17] ID.—COMMISSION OF THEFT—TIME—INSTRUCTIONS.—In such prosecution, in view of the fact that defendant was in effect advised by the information that the theft of the cigarettes was committed by unknown persons, an instruction, to the effect that if the jury found that the cigarettes had been stolen it was immaterial by whom such theft was committed, was unobjectionable; nor could the giving of an instruction to the effect that it was immaterial on what day or what night the offense charged in the information was committed, provided that it was committed within three years prior to the filing of the information, have misled or confused the jury in any manner.

[18] ID.—INSTRUCTIONS—ABSENCE OF PREJUDICIAL ERROR.—In such prosecution, while it would appear that the language of an instruction that defendant "is required to use the circumspection usual with persons taking goods by private purchase, and this is eminently the case with dealers buying at greatly depreciated

13.   See 8 Cal. Jur. 284; 26 R. C. L. 1074.
14.   See 2 Cal. Jur. 1026; 2 R. C. L. 261.
15.   See 8 Cal. Jur. 360.
16.   See 8 Cal. Jur. 340.
18.   See 2 Cal. Jur. 1026; 2 R. C. L. 256.

rates" was unwarranted from the facts in the case, the error was not of that grave importance which would justify the appellate court in ordering a reversal by reason thereof.

(1) 34 Cyc., p. 523.  (2) 34 Cyc., p. 516.  (3) 34 Cyc., p. 521. (4) 31 C. J., p. 654, sec. 173; 34 Cyc., p. 520.  (5) 34 Cyc., p. 521. (6) 34 Cyc., p. 522.  (7) 31 C. J., p. 662, sec. 180; 34 Cyc., p. 522. (8) 31 C. J., p. 841, sec. 454.  (9) 34 Cyc., p. 521.  (10) 34 Cyc., p. 527.  (11) 17 C. J., p. 317, sec. 3662.  (12) 16 C. J., p. 880, sec. 2204 (1926 Anno.).  (13) 16 C. J., p. 936, sec. 2299.  (14) 16 C. J., p. 1063, sec. 2506.  (15) 17 C. J., p. 349, sec. 3706.  (16) 17 C. J., p. 342, sec. 3690.  (17) 16 C. J., p. 1036, sec. 2477, p. 1053, sec. 2495.  (18) 17 C. J., p. 342, sec. 3690.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Charles S. Burnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Halverson & Price for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant appeals from a judgment of conviction of the crime of receiving stolen property, and from an order denying his motion for a new trial.

The information under which defendant was prosecuted charged "that one John Doe and one Richard Roe on or about the 13th day of November, 1922, . . . did wilfully, unlawfully and feloniously steal, take and carry away ten cartons of cigarettes of the value of six hundred dollars ($600) . . . and of the personal property of the Pacific Electric Railway Company, a corporation; that thereafter, to wit, on or about the 14th day of November, 1922, . . . the said H. J. Grahle did willfully, unlawfully, knowingly and feloniously . . . buy and receive from the said John Doe and Richard Roe the aforesaid ten cartons of cigarettes, . . . he, the said H. J. Grahle, then and there well knowing the same to have been stolen as aforesaid."

The evidence showed that certain persons named Bird, Monahan and Ketchum, who were switchmen working for the Pacific Electric Railway Company, broke into a box-car

about midnight on the night of the 12th or the morning of the 13th of November, 1922, and stole the cigarettes therefrom, which they placed in an empty box-car and. later removed to Bird's home in the town of Watts on the early morning of November 13, 1922. It also appears that on the night following, some of the cigarettes were taken to the home occupied by defendant and one of the said switchmen; and thereafter defendant materially assisted in attempting to conceal the identifying marks on the packages containing the cigarettes, and later made the necessary arrangements for their sale.

[1] It is first contended that because of the allegation that the cigarettes were the property of the Pacific Electric Railway Company, a corporation, it became necessary to prove that that organization was a corporation, which it is asserted the prosecution failed to do. The corporate existence of the Pacific Electric Railway Company was not a factor in the description either of the property alleged to have been stolen, or in the persons by whom it was stolen. Defendant could not have been misled by such allegation, nor injured by reason of the failure of the prosecution to prove whether or not the Pacific Electric Railway Company was a corporation. That particular fact was wholly immaterial and could neither aid nor hinder either the prosecution or the defense in any way. In such circumstances the failure to prove its status was of no consequence, and prejudicial error cannot be thereon predicated. (*People* v. *Coggins,* 80 Cal. 229 [22 Pac. 206].)

Appellant next complains that because it is alleged in the information that one John Doe and one Richard Roe stole the cigarettes and that the evidence showed that the offense was committed by persons named Bird, Monahan and Ketchum, there is a fatal variance between the allegation and the proof. [2] The gist of the offense of receiving stolen property is the receipt thereof by defendant with guilty knowledge of the fact, coupled with the intent of depriving the owner thereof of its possession. [3] It is a general rule, supported by many authorities, that the information need not set forth either the name of the person from whom the goods were received by the defendant, or the name of the person who committed the original theft. There are, however, some authorities which hold in effect

that where the principal felon is named in the information or the indictment, and the evidence shows that the crime was committed by some other person, the variance is fatal. (*United States* v. *De Bare,* 6 Biss. 358 [Fed. Cas. No. 14,935] ; *Huggins* v. *People,* 135 Ill. 243 [25 Am. St. Rep. 357, 25 N. E. 1002] ; *Commonwealth* v. *King* (Mass.), 9 Cush. 284.)

[4] All that is required of an information regarding the matter to which attention is directed is that it contain a statement of the acts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended. (Pen. Code, sec. 950.) [5] The names John Doe and Richard Roe are so commonly, if not universally, used in English-speaking countries for the purpose of designating fictitious or unknown persons that any person of "common understanding" knows what is intended when such names are used in an indictment or in an information without any explanation regarding same. [6] As applied to defendant, personally, there is nothing in the evidence which would indicate that he was not a person of at least "common understanding"; on the contrary, judging from the testimony given by him and the experience which he had had in his various occupations, including that of a policeman in the city of Los Angeles, it would be only fair to accord him a rating of intelligence and understanding rather above that possessed by the average person, and he must be presumed to have understood from the language of the information that certain persons whose names were unknown to the district attorney were by him alleged to have committed the larceny of the cigarettes, and that it was from such unknown persons that defendant received them. [7] The purpose of the rule requiring that the allegation correspond with the proof regarding the name of the thief is that the defendant may be protected as against a subsequent prosecution for the same offense; but where, as here, the transaction of which complaint is made is clearly identified, the rights of a defendant may be as thoroughly and as completely protected as though the correct name of the thief had been accurately set forth in the information. In the instant case the evidence on the part of defendant, as well as that on the part of the prosecution, leaves no room for doubt regarding the subject matter and the various parties

connected therewith. It is manifest that a subsequent prosecution against this defendant could not be successfully predicated upon the facts of the case. There can be not the slightest danger to defendant, either immediate or remote, from such a source; and there exists basis for the application of the rule. that when the reason for the rule ceases, so does the rule itself cease.

There seems to have been some confusion in the evidence regarding the precise date upon which the cigarettes were stolen, from which fact defendant seeks to take advantage of an opportunity to argue that if the cigarettes were stolen on a given date they could not have been the property of the Pacific Electric Railway Company. The evidence tends to show that the cigarettes were being shipped on a railway car of the Southern Pacific Railway Company and that it was necessary that they be transferred from the possession of the Southern Pacific Railway Company to that of the Pacific Electric Railway Company. If the testimony of some of the witnesses is to be given full credence, at the time the cigarettes are alleged to have been stolen from the Pacific Electric Railway Company the cigarettes had not been delivered to that company. On the other hand, one witness for the prosecution testified that he and two other men stole the cigarettes from a car belonging to and being operated by the Pacific Electric Railway Company, and identified the cigarettes as being those which defendant was charged with feloniously receiving. [8] The date of the larceny having been alleged as having occurred on or about a certain day, the question of whether the larceny was committed on a particular day is immaterial so long as the date falls within the statute of limitations for the prosecution of the offense and the cigarettes are shown to have been within the possession of the Pacific Electric Railway Company at the time the larceny occurred. (Pen. Code, ' sec 955.) As to the latter point, section 956 of the Penal Code provides: "When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material." There are many cases in this state bearing upon the effect of the foregoing statute, a number of which, together with several

from other jurisdictions, are considered in the case of *People* v. *Nunley,* 142 Cal. 105 [75 Pac. 676]. **[9]** The conclusion there reached is that where the act charged is otherwise identified, an erroneous allegation of ownership or possession of the subject matter of the larceny is immaterial; from all of which it follows that appellant's contention in this regard cannot be sustained.

Counsel for appellant also complains that the evidence is insufficient to support the verdict. The testimony of one of the men who participated in the larceny was, in substance, that soon after the cigarettes had been stolen they were taken to the house where defendant lived; that defendant was present when witness attempted to obliterate from the cover of the cartons the name of the consignee of the goods, and that defendant wrote the name of "Turner" on each of the cartons which contained the cigarettes; that defendant arranged for the sale of part of the cigarettes and directed the witness to where he could get a transfer man to deliver them to the prospective purchaser; that defendant assisted in loading the cigarettes into the truck on which they were to be transported, and, after the cigarettes were delivered to the purchaser thereof and payment received therefor (which was slightly less than the market value), defendant received a part of the purchase price. **[10]** From a consideration of such evidence the jury was warranted in reaching the conclusion that defendant received the property with guilty knowledge that it had been stolen, and that his subsequent acts showed that he intended to prevent the owner from again possessing his property.

**[11]** The evidence shows that the transaction regarding the sale of the cigarettes was carried on under the name of "Turner," which was the name which had been written by defendant on the cover of the cartons. For the avowed purpose of corroborating a witness who had testified regarding defendant's participation in the transaction, and particularly as to the use by defendant of the name "Turner," evidence was introduced to the effect that three or four weeks after the sale of the cigarettes was made in the first transaction, defendant made a subsequent sale of other "cigarettes and tobacco" apparently for a man named Turner, and for which merchandise defendant was paid the sum of $560 by means of a check, and which check was filed

as an exhibit in the case. It was not an attempt to show the commission by defendant of a similar offense; neither was any claim made, nor was any evidence offered which tended to show, that the sale was not legitimate in all respects. Conceding that the evidence of this subsequent transaction was immaterial and should have been rejected, we are unable to perceive any prejudicial error in its admission.

[12] No error was committed by the judge of the trial court in refusing to strike out certain evidence introduced by the prosecution for the purpose of tracing the movements of the cigarettes and the car in which they were being transported. The assumption by defendant that such testimony was in conflict with other evidence is no good reason why it should be taken from the consideration of the jury.

[13] Defendant's request that the court peremptorily instruct the jury to return a verdict of not guilty was properly refused. The evidence as heretofore outlined was sufficient in weight and character to warrant the court in submitting it to the jury for the purpose of having it determine the guilt or the innocence of the accused.

[14] Defendant urges that the court erred in refusing to give to the jury, at defendant's request, certain other instructions. The first of these, to the effect that the jury could find defendant guilty only of the particular offense of which he was charged, was fully and fairly covered by another instruction which was given to the jury. Certain other instructions which related to the presumption of defendant's innocence; to the necessity of proving his guilt beyond a reasonable doubt; to the unlawfulness of convicting defendant on mere suspicion or speculation, or because the evidence preponderated in favor of his guilt—all of which were offered by defendant and by the court refused—were likewise substantially covered by the court in other instructions given to the jury. [15] One of defendant's refused instructions was "that if, after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror so entertaining such doubt not to vote for a verdict of guilty, nor to be influenced in so voting, for the single reason that a majority of the jury should be in favor of the verdict of guilty."

In the cases of *People* v. *Dole,* 122 Cal. 486 [68 Am. St. Rep. 50, 55 Pac. 581], *People* v. *Howard,* 143 Cal. 316 [76 Pac. 1116], and *People* v. *Wong Loung,* 159 Cal. 520 [114 Pac. 829], it is held that such an instruction is proper and should be given. However, the refusal to give such an instruction does not constitute such error as will for that reason alone justify the reversal of the case. (*People* v. *Singh,* 20 Cal. App. 146 [128 Pac. 420]; *People* v. *Fisher,* 16 Cal. App. 276 [116 Pac. 688]; *People* v. *Loomer,* 13 Cal. App. 654 [110 Pac. 466]; *People* v. *Svendsen,* 25 Cal. App. 1 [142 Pac. 861]; *People* v. *Walton,* 53 Cal. App. 35 [199 Pac. 824]; *People* v. *McNabb,* 63 Cal. App. 755 [219 Pac. 1031].)

[16] Appellant challenges the giving by the court to the jury of several different instructions. The first of these is: "A person must be presumed to intend to do that which he voluntarily and willfully does in fact do, and must also be presumed to intend all the natural, probable and usual consequences of his own acts."

That the giving of such an instruction is not error is held in the case of *People* v. *Webster,* 13 Cal. App. 348 [109 Pac. 637]. That was a murder case and the instruction was clearly applicable. In the instant case there might be some question regarding the applicability of the instruction to the evidence. But in any event we are unable to discover any prejudicial effect, however slight, which resulted to defendant from the giving of the instruction.

[17] The next instruction of which complaint is made by appellant is to the effect that it was immaterial on what day or what night the offense charged in the information was committed, provided that it was committed within three years prior to the filing of the information. It is admitted by appellant that the instruction correctly stated the law, but it is objected that it was misleading and confusing to the jury, in that the jury was elsewhere instructed that if it found that the cigarettes had been stolen it was immaterial by whom such theft was committed. The question of the sufficiency of the allegation concerning the names of the persons who committed the theft has already received attention herein. As heretofore set forth, there is authority for holding that where the information in a case of this character contains a specific allegation that the goods were stolen by a certain designated person, any material departure in the proof as to the name of that person will con-

67 Cal. App.—13

stitute such a variance as to entitle the defendant to an acquittal. But in view of the fact that defendant here was in effect advised by the information that the theft of the cigarettes was committed by unknown persons, the instruction was unobjectionable. Nor are we able to discover how the giving of the instruction as to the immateriality of the time when the offense was committed could have misled or confused the jury in any manner.

Another criticised instruction given by the court to the jury contained the statement that "he (defendant) is required to use the circumspection usual with persons taking goods by private purchase, and this is eminently the case with dealers buying at greatly depreciated rates." Standing by itself, that part of the instruction which has been quoted bore no relation to the evidence in the case. It was not claimed that defendant personally purchased the cigarettes in the sense that he ever bought them from the persons who stole them. Defendant's connection with the transaction consisted in receiving the stolen property after the larceny had been committed and in assisting in the sale of the stolen property to another person. Besides, it was not shown that the cigarettes were sold at such a reduction from their market value as would justify the intimation that they had been sold "at greatly depreciated rates." [18] While it would appear that the language of the instruction to which reference has been made was unwarranted from the facts in the case, the error was not of that grave importance which would justify this court in ordering a reversal by reason thereof. It would seem extremely unlikely that the particular matter to which attention has been directed could greatly or at all have influenced the jury in the way of finding a verdict of guilty, or that without such instruction a verdict of acquittal would have been rendered.

After an examination of the entire cause, including the evidence, this court is of the opinion that the errors to which appellant has directed attention have not resulted in a miscarriage of justice.

The judgment and the order denying the motion for a new trial are affirmed.

Conrey, P. J., and Curtis, J., concurred.